# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 17-1086


**RYAN LEE STRODER, INDIVIDUALLY, ETC.**

**VERSUS**

**HILCORP ENERGY COMPANY, ET AL.**



**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 13-C-2840-D
HONORABLE D. JASON MECHE, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**BILLY HOWARD EZELL**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Elizabeth A. Pickett, Billy Howard Ezell, and Candyce G. Perret, Judges.


**REVERSED AND REMANDED.**

**Dan Edward West**
**McGlinchey, Stafford**
**301 Main St., 14th Floor**
**Baton Rouge, LA 70825**
**(225) 383-9000**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Westchester Surplus Lines Insurance Company**

**Mark Gerard Artall**
**Attorney at Law**
**109 S. College Road**
**Lafayette, LA 70503**
**(337) 233-1777**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Ryan Lee Stroder**
    **Ryan Lee Stroder as natural tutor of Olivia Stroder**

**Barry Jamar Rozas**
**LeBas Law Offices**
**2 Flagg Place, Suite 1**
**Lafayette, LA 70508**
**(337) 236-5500**
**COUNSEL FOR INTERVENOR/APPELLEE:**
    **American Interstate Insurance Company**

**Robert Sartain Emmett**
**Christopher M. Hannan**
**Kimberly C. Delk**
**Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.**
**201 St. Charles Ave, Ste 3600**
**New Orleans, LA 70170**
**(504) 566-5200**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Monty "Monkey" Lanthier**
    **Thomas Stevens and Associates, L.L.C.**

**Joseph Michael Guillot**
**Christy L. McMannen**
**Christovich & Kearney  L.L.P.**
**601 Poydras St., #2300**
**New Orleans, LA 70130-6078**
**(504) 561-5700**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Freddie Grimaldo**
    **Gulf Coast Brokerage, LLC**

**Kevin Paul Merchant**
**NeunerPate**
**P. O. Box 52828**
**Lafayette, LA 70505**
**(318) 237-7000**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Hilcorp Energy Company**

**Catherine N. Thigpen**
**Degan, Blanchard & Nash**
**400 Poydras Street, Ste 2600**
**New Orleans, LA 70130**
**(504) 529-3333**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Darwin National Assurance Company**

**EZELL, Judge.**

Ryan Stroder appeals two judgments of the trial court below, one granting summary judgment in favor of Monty Lanthier and Thomas Stevens and Associates, L.L.C., and another granting summary judgment in favor of Freddie Grimaldo and Gulf Coast Brokerage, L.L.C. (hereinafter collectively referred to as the Defendants). For the following reasons, we reverse the decisions of the trial court and remand the case for further proceedings.

On October 17, 2012, Mr. Stroder was employed by MyVac, L.L.C. as a truck driver. That day, Mr. Stroder was called to a land based oil rig operated by Hilcorp Energy Company to transport drilling mud for waste disposal. Mr. Lanthier, an employee of Thomas Stevens and Associates, was acting as an independently contracted "company man" supervising the rig operations. Mr. Grimaldo, who was employed by Gulf Coast, was acting as solids control operator and was in charge of disposal of the drilling fluids.

Though he was capable of driving a tank or bottle truck, Mr. Stroder arrived at the rig in an open-ended dump truck, as ordered by Defendants. Upon viewing the mud to be transported, Mr. Stroder felt that it was too fluid to be hauled in that truck. Mr. Stroder had previously been warned not to haul mud that was "too liquidy" in the open-ended truck due to the likelihood of it sloshing or shifting during transport. Mr. Stroder was concerned enough that he offered to return to MyVac and get his bottle truck to haul the mud. Despite these concerns, Mr. Stroder claims he was assured multiple times that the load was safe to transport. The mud was ultimately loaded in the truck by Mr. Grimaldo, and Mr. Stroder left the rig. While driving through an "s" curve a few miles from the rig, the load shifted in the trailer, causing the truck to overturn. Mr. Stroder suffered severe injuries as a result.

Mr. Stroder filed suit against Hilcorp and eventually Defendants, who all filed motions for summary judgment. Hilcorp was dismissed on summary judgment, and that ruling was not appealed. Defendants each claimed that they owed no duty to Mr. Stroder, as federal and Louisiana administrative law imposed a duty on Mr. Stroder alone, as a commercial driver, to secure his load. The trial court agreed with Defendants and granted their motions for summary judgment. From those decisions, Mr. Stroder appeals.

On appeal, Mr. Stroder asserts three assignments of error, essentially claiming that the trial court erred in granting the summary judgments and in finding that Defendants owed no duty to him under federal and Louisiana administrative law. We agree with Mr. Stroder.

Summary judgment procedure is favored and "is designed to secure the just, speedy, and inexpensive determination of every action . . . . and shall be construed to accomplish these ends." La.Code Civ.P. art. 966(A)(2). In reviewing the trial court's decision on a motion for summary judgment, this court applies a de novo standard of review. *Jackson v. City of New Orleans*, 12-2742, 12-2743 (La. 1/28/14), 144 So.3d 876, *cert. denied*, _____ U.S. _____, 135 S.Ct. 197 (2014).

The burden of proof is on the mover unless the mover will not bear the burden of proof at trial, in which case the mover is not required to negate all essential elements of the adverse party's claim, but only to point out to the court the absence of factual support for one or more of the elements necessary to the adverse party's claim. La.Code Civ.P. art. 966(D)(1). "The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." *Id*.

"After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3).

> A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate.

*Jackson*, 144 So.3d at 882.

> In ruling on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Hines* [*v. Garrett,* 04-806 (La. 6/25/04), 876 So.2d 764]. **Despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent's favor**.

*Vanner v. Lakewood Quarters Ret. Cmty.*, 12-1828, p. 6 (La. App. 1 Cir. 6/7/13), 120 So.3d 752, 755 (emphasis ours).

The trial court granted Defendants' motions for summary judgment on the grounds that Mr. Stroder failed to establish the essential element of duty to support his negligence claims. The determination of whether a duty exists is a question of law that may be properly decided by summary judgment. *Seaman v. Howard*, 98-1492 (La.App. 3 Cir. 6/2/99), 743 So.2d 694, *writ denied*, 99-1901 (La. 10/29/99), 748 So.2d 1165. Whether a duty exists may be resolved by summary judgment "when neither the facts nor the credibility of witnesses are in dispute and when it is clear that no duty is owed as a matter of law." *Lee v. State Dep't of Pub. Safety & Corr.*, 10-1013, p. 6 (La.App. 3 Cir. 3/30/11), 60 So.3d 106, 110.

In the instant action, the parties dispute whether Defendants, as the shippers of the mud, owed a duty to Mr. Stroder, the carrier. Mr. Stroder contends that

3

Defendants are liable for its improper loading under Louisiana negligence law. Defendants respond that no duty was owed because the defective loading was obvious and apparent, rather than latent or concealed, which imposes the responsibility on Mr. Stroder as a carrier under federal law, notably 49 C.F.R. § 392.9 (2018). Louisiana has adopted 49 C.F.R. § 392.9 (2018) by way of the Louisiana Administrative Code. *See* 33 La.Admin.Code Pt. V § 10301. This is a case of first impression in Louisiana. Because we can find no cases dealing with the subject matter of this suit, and because the regulations detailing the duties of common carriers and shippers are federal in basis, we are forced to rely on federal law in deciding this matter.

Federal regulations impose a nondelegable duty upon a carrier to secure all loads safely. See 49 C.F.R. § 392.9 (2018); see also *Rector v. General Motors Corp.*, 963 F.2d 144 (6th Cir. 1992). In particular, a carrier or driver must ensure that his "vehicle's cargo is properly distributed and adequately secured." 49 C.F.R. § 392.9(a)(1) (2018). Moreover, a shipper cannot force a carrier to haul an unsafe load. *Decker v. New England Pub. Warehouse, Inc.*, 749 A.2d 762 (Me.2000); see 49 C.F.R. § 392.9(a) (2018). Therefore, a carrier is required to take steps to prevent or protect cargo from shifting or falling. 49 C.F.R. §§ 393.100–393.136 (2018). These federal regulations suggests that carriers "should have the final responsibility for the loads they haul" because no shipper can force a carrier to accept an unsafe load. *Decker*, 749 A.2d at 766; see also 49 C.F.R. § 392.9(a) (2018).

The predominant view regarding the duty of care in loading cargo was discussed at length in *United States v. Savage Truck Line, Inc.*, 209 F.2d 442, (4th Cir. 1953), *cert. denied*, 347 U.S. 952, 74 S.Ct. 677 (1954). The *Savage* court

4

summarized the rule concerning the proper allocation of duty as between the shipper and the carrier, as follows:

> The primary duty as to the safe loading of property is . . . upon the carrier. When the shipper assumes the responsibility of loading, the general rule is that he becomes liable for the defects which are latent and concealed and cannot be discerned by ordinary observation by the agents of the carrier; but if the improper loading is apparent, the carrier will be liable notwithstanding the negligence of the shipper.

*Id*. at 445.

This *Savage* rule has been adopted by the majority of federal courts. *Decker*, 749 A.2d 762. *See also Smart v. Am. Welding & Tank Co*., 826 A.2d 570 (N.H. 2003); *Brashear v. Liebert Corp*., 2007 Ohio App. Unrep. 296 (Oh.App. 10 Dist. 2007); *W.J. Casey Trucking & Rigging Co. v. Gen. Elec. Co*., 376 A.2d 603, (N.J.Super. Ct. Law Div. 1977). "Pursuant to the *Savage* rule, even if Defendant was negligent in the loading of Plaintiff's truck, Defendant would not be liable if the improper loading was apparent." *Johnston v. Sappi Fine Paper N. Am.,* No. CIV. 06-11617, p. 2 (E.D. Mich. 2007) (unpublished opinion). The *Brashear* court held that "the shipper is liable for defects that are latent and concealed and cannot be discerned by ordinary observation by the agents of the carrier; if the improper loading is apparent, however, the carrier will be liable notwithstanding that the shipper was negligent." *Brashear*, 2007 Ohio App. Unrep. 296 at p. 14.

Accordingly, the issue before the court is whether the fluidity of the mud was latent and concealed, therefore subjecting Defendants to potential liability, or whether they were clearly obvious, meaning Mr. Stroder alone bore the liability for his load's defects. Defendants argue liquidity of the mud was patent. Defendants point out that Mr. Stroder testified that he saw the mud, voiced concern over how liquid it was, and that he recognized that the liquidity of the mud rendered the load more difficult to secure. Mr. Stroder counters that there are genuine issues of

5

material fact as to whether the defects were latent and concealed or patent. In support of this argument, Mr. Stroder states that he had only driven a truck commercially for three months at the time of the accident and that he was unfamiliar with the mud's actual viscosity. Moreover, Mr. Stroder alleges that when he voiced concern over the wateriness of the mud that he was assured by Defendants' employees that the mud was safe for transportation.

"[W]hether a defect in loading is obvious through ordinary observation or concealed is a question of fact." *Smart*, 826 A.2d at 575. While Mr. Stroder clearly was aware the mud was in somewhat of a fluid state, "this fact is not dispositive." *Grantham v. Nucor Corp., No*. 2:07-CV-229 TS, p. 2 (D. Utah 2008) (unpublished opinion). The court in *Grantham* noted that several federal courts have found that summary judgment was inappropriate where inexperienced drivers were involved or where assurances of safety were made by shippers.

> In *Ebasco Services, Inc. v. Pacific Intermountain Express Co*., [398 F.Supp. 565 (S.D.N.Y. 1975)] the court found summary judgment was not appropriate in a case where recovery was sought for damages done to a pump motor when the top part of the motor struck the underside of a bridge. The motor was one foot over the height limit, but it was represented to the carrier that the height of the motor had been measured and was safe to be driven. The court found that while the defect—the height of the shipment—was apparent to the naked eye, **the question of whether the defect was patent was not appropriate for summary judgment because of the statements made by the employees of the shipper**.
>
> The case of *Franklin Stainless Corp. v. Marlo Transport Corp*., [748 F.2d 865 (4th Cir. 1984)] is remarkably similar to the case before the Court. In that case, the shipper loaded trucks with steel coils down the center of the trailer. The carrier informed the shipper that he had never hauled steel coils and asked whether the load was secure. The shipper assured the carrier that this was a standard loading method and that there would be no trouble with the load. The court found that the loading of the steel coils down the center of the trucks without strapping or chocking was open and obvious to the carrier. It did not follow, however, that the defect in that manner of loading was open and obvious. **The court considered important the assurances that were given, the fact that the carrier relied on those assurances**, and that the carrier believed that the loading was proper.

Another example is found in *Alitalia v. Arrow Trucking Co.* [977 F.Supp. 973 (D.Ariz. 1997).] That case involved the transportation of an engine which violated Arizona's height limit and was therefore damaged when it hit a bridge. There, the height of the engine was obvious but that did not mean that the defect was patent. The plaintiffs had presented evidence indicating that the excessive height may have been concealed by the shipper. Because a reasonable trier of fact could find that the defect was latent and concealed, summary judgment was inappropriate.

A more recent example can be found in *Sygenta Crop Production, Inc. v. Doyle Brant, Inc*. [3:06–CV–84–S, (W.D.Ky. 2008) (unpublished opinion)]. In that case, the shipper had loaded the trailer by placing containers down the center of the trailer with no supports on the sides. The defendants argued that this defect was apparent, not latent and concealed. The court found that there were genuine issues of material fact as to whether the alleged defect in the loading of the trailer was apparent, which prevented summary judgment. In particular, the court looked to the following facts. The driver had testified that he had never hauled the type of container in which the product was shipped. The driver asked an employee of the shipper if the containers should be secured and was told by the employee that the containers would not shift and that no additional support was needed. The driver believed that the employee loading the trailer had loaded such containers before. Moreover, **the shipper's shipping supervisor told the driver that, in his opinion, the load was safe**. Based on these things, the court found summary judgment was inappropriate.

*Id.* at 2-3 (footnotes omitted)(emphasis ours).

A review of the evidence before this court reveals that, in light of federal jurisprudence allowing liability on shippers who make assurances regarding the safety of shipments they themselves loaded, genuine issues of material fact remain. While the defect—the liquidity of the mud—was obviously apparent to the naked eye, the question of whether the defect was patent is not appropriate for summary judgment because of statements made by Defendants.

Mr. Stroder testified that he had been driving commercially for a mere three months before this accident. He stated that when he saw the mud at issue, he felt it was "too liquidy" to haul in the open dump truck, though he also testified that he did not have the proper equipment to measure the actual viscosity of the drilling

7

fluid. He then voiced his concerns to Mr. Grimaldo, who was the person loading the mud and who had apparently ordered the open dump truck, rather than the bottle truck. Mr. Stroder claims that he told Mr. Grimaldo he could go back to MyVac and get his bottle truck, but Mr. Grimaldo assured him the load was fine. He stated that Mr. Grimaldo then went into the company man trailer, presumably to talk to Mr. Lanthier, who was in charge of the rig. When Mr. Grimaldo returned from the trailer, he again assured Mr. Stroder of the safety of the load. Mr. Stroder, still apparently unsure about the safety of the load, called MyVac, who told him to rely on the opinions of Defendants. Defendants, of course, dispute these claims.

Here, both the facts concerning any assurances made by Defendants and the credibility of the witnesses are in dispute. Because reasonable persons could disagree as to whether Defendants actually gave the assurances claimed by Mr. Stroder, there exists a genuine issue of material fact as to whether Defendants indeed made these or any culpability inducing statements. Whether the assertions were made is clearly material to this case, as under the federal law cited above, making them could render Defendants potentially liable for the following accident. Accordingly, genuine issues of material fact exist in this matter, and Defendants are not entitled to summary judgment as a matter of law. The judgments granting them summary judgment are hereby reversed.

For the above reasons, we hereby reverse the judgments of the trial court granting summary judgment in favor of the Defendants. We remand the case for further proceedings in accordance with our judgment. Costs of this appeal are hereby assessed against Defendants, to be split equally between them.

**REVERSED AND REMANDED.**