STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

13-401


FRANK CULLEY FIRMIN

VERSUS

GREGORY TODD FIRMIN, ET AL.


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20115864
HONORABLE JOHN D. TRAHAN, DISTRICT JUDGE

**********

MARC T. AMY
JUDGE

**********

Court composed of Sylvia R. Cooks, Marc T. Amy, and Phyllis M. Keaty, Judges.


AFFIRMED.


Robert A. Mahtook, Jr.
Lisa M. Milazzo
Kaitlin J. Dyer
Mahtook & LaFleur
Post Office Box 3605
Lafayette, LA   70502
(337) 266-2189
COUNSEL FOR DEFENDANT/APPELLEE:
        Oasis Sports Bar & Grill

**Theodore G. Edwards, IV**
**Rachel B. Godley**
**Davidson, Meaux, Sonnier, McElligott, Fontenot**
**Gideon & Edwards**
**Post Office Drawer 2908**
**Lafayette, LA   70502**
**(337) 237-1660**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
      **Frank Culley Firmin**

**Randy M. Guidry**
**Durio, McGoffin, Stagg & Ackermann**
**Post Office Box 51308**
**Lafayette, LA   70505**
**(337) 233-0300**
**COUNSEL FOR DEFENDANT/APPELLEE:**
      **Gregory Todd Firmin**

**Michael L. Barras**
**Post Office Box 11340**
**New Iberia, LA   70562-1340**
**(337) 369-6400**
**COUNSEL FOR DEFENDANT/APPELLEE:**
      **James Michael Spiehler**

AMY, Judge.

The plaintiff in this matter alleges that he was injured as a result of an altercation with his brother. The plaintiff filed suit against the brother, one of his brother's acquaintences, and the bar where the altercation occurred. The bar filed a motion for summary judgment seeking dismissal of the plaintiff's claims against it. The trial court granted the motion and dismissed the plaintiff's claims against the bar. The plaintiff appeals. For the following reasons, we affirm.

**Factual and Procedural Background**

The record indicates that the plaintiff, Frank Culley Firmin,[1] and his brother, Gregory Todd Firmin, were involved in an altercation at the Oasis Sports Bar & Grill, LLC. The parties do not agree as to how the altercation occurred, including which party was the aggressor.

According to Culley, he intended to meet someone at Oasis. Culley alleges that Gregory was already at the bar and was drunk and belligerent. According to Culley, while he was trying to text message his friend to arrange another meeting place, Gregory "jabbed" him in the chest. He told Gregory not to do that again, but Gregory hit him again, causing Culley to drop his phone. At this point, Culley contends that he "wrapped [Gregory] up[.]" Other patrons of the bar, including defendant James Michael Spielher, "took Culley down to the floor, and . . . held [him] pinned to the floor." Culley contends that no one restrained Gregory. While Culley was pinned to the floor, Gregory struck him in the face.

Gregory offered a different version of the altercation. According to Gregory, Culley was accusing him of "sabotaging" his life. He admitted to poking

---

[1] Culley Firmin's name is also spelled as "Cully" in the record. We use the spelling contained in the petition and the parties' briefs.

Culley in the chest, but only in an effort to get Culley to listen to him. Gregory alleges that Culley "choked him off" after that. Gregory claims that "everything went dark" and that he saw Culley's face and hit him. According to Gregory, he does not remember getting out of the choke hold.

Mr. Spiehler also testified that Gregory poked Culley in the chest, although Mr. Spiehler testified that Gregory poked Culley with the neck of a beer bottle. According to Mr. Spiehler, Culley told Gregory "don't do that again." Apparently Gregory poked Culley again. Mr. Spiehler testified that Culley "got aggressive" and grabbed Gregory around the neck. Although Mr. Spiehler could not say whether or not Culley was choking Gregory, he stated that "[i]t appeared to be a pretty aggressive move to me." According to Mr. Spiehler, when he tried to pull Culley off Gregory, he and Gregory tripped and fell to the ground.

Culley testified that he was disoriented and needed medical attention and that his phone was broken. According to his deposition, the bar manager would not call 9-1-1, and instead had her daughter drive him to the emergency room. Culley also testified that as a result of being struck in the face, his left eye was dislocated from the socket, and he had orbital fractures.

Thereafter, Culley filed this action against Gregory, Mr. Spiehler, and Oasis. Culley's claims against Oasis can be summed up as allegations that: 1) Oasis had knowledge of prior bar fights on its premises, but failed to provide adequate security, including security personnel; and 2) Oasis failed to provide him with adequate medical treatment after the fight. Oasis subsequently filed a motion for summary judgment contending that it owed no duty to Culley and seeking to have all of Culley's claims against it dismissed. After a hearing, the trial court granted the motion for summary judgment and dismissed Culley's claims against Oasis.

Culley appeals, asserting that:

1. The Trial Court erred in concluding that no genuine issues of material fact remained with regard to the liability of Oasis under the applicable Louisiana law as applied to the relevant facts in this matter.

2. The Trial Court erred in granting Oasis's Motion for Summary Judgment considering the Plaintiff demonstrated that Oasis is liable to him pursuant to Louisiana's applicable law.

## Discussion

*Motion for Summary Judgment*

Motions for summary judgment are reviewed de novo on appeal using the same criteria the trial court uses to determine whether summary judgment is appropriate. *Arkell v. Lafayette City-Parish Consol. Gov't.*, 09-918 (La.App. 3 Cir. 2/3/10), 28 So.3d 1248. A motion for summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B)(2).[2] Further,

> The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

La.Code Civ.P. art. 966(C)(2). Additionally, "an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as

---

[2] We note that the legislature amended La.Code Civ.P. art. 966(B)(2) in 2013 La. Acts 391, effective August 1, 2013.

otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial." La.Code Civ.P. art. 967(B).

*Duty to Protect Others from the Criminal Activities of Third Parties*

The plaintiff first argues that the trial court erred in finding that Oasis did not have a duty to provide "security and protection to its patrons." In *Posecai v. Wal-Mart Stores, Inc.*, 99-1222 (La. 11/30/99), 752 So.2d 762, the supreme court addressed claims that a business failed to provide adequate security, and, because of that failure, the patron was the victim of a criminal act by a third party. The supreme court found that in order to succeed on such a claim, the plaintiff must prove all of the elements of the duty-risk analysis, including 1) that the conduct in question was the cause-in-fact of the resulting harm; 2) that the defendant owed a duty of care to the plaintiff; 3) that that duty was breached by the defendant; and 4) that the risk of harm was within the scope of protection afforded by the breach. *Id.* The plaintiff must also show that he or she suffered actual damages. *Pinsonneault v. Merchants & Farmers Bank & Trust Co.*, 01-2217 (La. 4/3/02), 816 So.2d 270.

In cases such as this one, the issue of whether a duty is owed is a threshold issue. *Posecai*, 752 So.2d 762. Further, whether a duty is owed is a question of law. *Id.* Generally, a business owner has no duty to protect others from the criminal activities of third persons. *Id.* However, a duty can arise "when the criminal act in question was reasonably foreseeable to the owner of the business." *Id.* at 766.

Ultimately, the supreme court in *Posecai* adopted a balancing test for determining whether a business owed a duty to protect others from the criminal activities of others. *Posecai*, 752 So.2d 762. The supreme court adopted the following test:

4

The foreseeability of the crime risk on the defendant's property and the gravity of the risk determine the existence and the extent of the defendant's duty. The greater the foreseeability and gravity of the harm, the greater the duty of care that will be imposed on the business. A very high degree of foreseeability is required to give rise to a duty to post security guards, but a lower degree of foreseeability may support a duty to implement lesser security measures such as using surveillance cameras, installing improved lighting or fencing, or trimming shrubbery. The plaintiff has the burden of establishing the duty the defendant owed under the circumstances.

The foreseeability and gravity of the harm are to be determined by the facts and circumstances of the case. The most important factor to be considered is the existence, frequency and similarity of prior incidence of crime on the premises, but the location, nature and condition of the property should also be taken into account. It is highly unlikely that a crime risk will be sufficiently foreseeable for the imposition of a duty to provide security guards if there have not been previous instances of crime on the business' premises.

*Id.* at 768. Additionally, the applicable duty does not change when a patron is attacked by another guest rather than a third party. *Fredericks v. Daiquiris & Creams of Mandeville, L.L.C.*, 04-567 (La.App. 1 Cir. 3/24/05), 906 So.2d 636, *writ denied*, 05-1047 (La. 6/17/05), 904 So.2d 706.

Ultimately, in *Posecai*, 752 So.2d 762, the supreme court declined to find that a business had a duty to provide security where, even though the business was in a high-crime area, there had been few prior incidents of the type complained of. In *Posecai*, the plaintiff complained that she was mugged in the parking lot of a Sam's Club. There was evidence that only three "crimes against the person" occurred on Sam's premises in the six-and-a-half years preceding the incident, one of which happened after business hours and one of which was related to a domestic violence incident. Based primarily on this evidence, the supreme court found that there was insufficient foreseeability to impose a duty on Sam's to provide security patrols or lesser security measures. *Id. See also Mackey v. Jong's Super Value #2*, 41,440 (La.App. 2 Cir. 9/27/06), 940 So.2d 118; *Pinsonneault*, 816 So.2d 270.

5

In contrast, in *Adams v. Traina*, 36,306 (La.App. 2 Cir. 10/25/02), 830 So.2d 526, *writs denied*, 02-2844, 02-2898 (La. 2/7/03), 836 So.2d 101-102, there was a history of criminal conduct similar to that which caused the plaintiff harm. Given that history, the second circuit found that there was sufficient foreseeability to impose a duty on the business to provide adequate security. In *Adams*, the plaintiff, a bystander, was seriously injured during a shooting in the parking lot of a "bottle club." One of the defendants not only owned the shopping center that contained the club, but also owned and operated a package liquor store in the same building where most of the club's patrons would purchase alcohol. The alcohol was consumed in either the club or the parking lot. There was evidence that the owner did not have any security for either the liquor store or the parking lot. Further, the owner knew that there were problems with people drinking and fighting in the parking lot, including previous shootings in the parking lot and a stabbing in the club itself. The plaintiff also submitted evidence that the police had been called twenty-five times in the past two years for reports of violence in the parking lot, twenty-four of which involved guns. Based on this evidence, the second circuit found that the plaintiff had submitted sufficient evidence to establish that the owner had a duty to provide security for the parking lot. *Id. See also Patton v. Strogen*, 39,829 (La.App. 2 Cir. 8/17/05), 908 So.2d 1282, *writ denied*, 05-2397 (La. 3/17/06), 925 So.2d 548.

In cases where the combatants were both patrons of the same business establishment, the duty owed by the business does not change. *Fredericks*, 906 So.2d 636. In *Fredericks*, the plaintiff was assaulted in the parking lot by several other patrons of the defendant bar. The plaintiff contended that the bar had inadequate security and that, before the attack, his attackers had been staring at him

6

and flirting with his girlfriend inside the bar. The plaintiff also testified that he considered the bar a "classy" place and that he did not know his attackers before that evening. Additionally, the bar introduced evidence that there had never been any violent incidents at the bar before this one and that nothing had occurred inside which alerted the bar's employees to the possibility of trouble. Based on this evidence, the first circuit found that there was nothing to indicate that the bar owed any duty to "prevent this attack on" the plaintiff. *Id.* at 645. *See also Taylor v. Stewart*, 95-1743 (La.App. 1 Cir. 4/4/96), 672 So.2d 302.

In this case, both Culley and Gregory's deposition testimony indicated that the bar had no security. Oasis submitted evidence that indicated that Culley, Gregory, and Mr. Spiehler all considered Oasis to be a "decent and peaceful place" over the last few years. Further, both Gregory and Mr. Spiehler testified that they had been frequent customers at Oasis for more than five years. However, Gregory testified that he had heard about other fights at the bar, but had only witnessed one.

Culley asserted that there had been an earlier incident where another patron had gotten into a fight in the parking lot and had died as a result of injuries suffered during the fight. According to Culley, this incident was sufficient to put Oasis on notice that it needed to implement security measures. Culley submitted into evidence a copy of a lawsuit filed concerning the earlier incident,[3] including an affidavit from Kathryn Westley, who had been bartending at Oasis for more than ten years. In her affidavit, she stated that fights were a "rare occurrence" at the bar. Further, Ms. Westley averred that the plaintiff in that case refused medical treatment. A police report submitted into evidence indicated that the police

---

[3] However, we note nothing in the record indicating that this case has been resolved in any of the parties' favor.

7

responded to the scene and that the plaintiff refused medical treatment for a head injury. According to the police report, the plaintiff died the next day as a result of the head injury.

Based on our review of the evidence in the record, Oasis successfully pointed out an absence of factual support for Culley's claim that Oasis had a duty to provide adequate security under the facts of this case. Thus, according to La.Code Civ.P. art. 966(C)(2), Culley was required to produce factual support sufficient to establish that he would be able to satisfy his evidentiary burden at trial. Our review reveals that Culley failed to do so. Although there are conflicting accounts about who instigated the altercation and how the altercation occurred, those facts are not determinative of whether Oasis had a duty to provide security to protect patrons from the criminal activities of third persons. Thus, the dispute concerning the details of the altercation are not material facts for the purposes of this motion for summary judgment. *See Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512 (La. 7/5/94), 639 So.2d 730.

Further, the defendants presented deposition testimony indicating that Oasis was a "decent and peaceful place" in the years before this incident. That testimony is supported by Ms. Westley's affidavit which stated that fights were a "rare occurrence[.]" Culley submitted no evidence indicating how often the police had been called to Oasis and, if so, how many of those incidents concerned violent encounters. *Compare with Patton*, 908 So.2d 1282; *Adams*, 830 So.2d 526. Although Culley asserts that the earlier incident—in which a patron unfortunately lost his life as a result of injuries suffered during a fight in Oasis's parking lot—is sufficient to require that Oasis provide security, that incident occurred more than a year and a half before the altercation at issue here. *See Posecai*, 752 So.2d 762.

8

Similarly, although many of the details of who instigated the altercation and how it proceeded are in dispute, Culley presented no evidence of actions before the fight began that would notify Oasis or its employees that "trouble was imminent[.]" *Fredericks*, 906 So.2d at 645. Nor did Culley submit any evidence that there was any "time or opportunity to warn [Culley] or prevent the attack on him once it began." *Id.*

Following *Posecai*, 752 So.2d 762, we find that Culley's submission is insufficient to indicate that he will be able to establish that Oasis possessed the requisite foreseeability of the crime risk so as to impose a duty to post security guards or other, lesser, security measures. Culley's argument in this regard is without merit.

*Duty to Notify the Authorities*

Culley also asserts that Oasis failed to contact the authorities once the altercation had begun. In *Rodriguez v. New Orleans Public Service, Inc.*, 400 So.2d 884, 887 (La.1981), a pre-*Posecai* case, the supreme court stated that a proprietor's duty to keep its premises safe from unreasonable risks of harm "can be discharged by the summoning of those entrusted by law with the power of immediately maintaining the peace, the police, at the time the proprietor knows or should reasonably know of the third person's intention and apparent ability to execute the intended acts." However, there are two flaws to Culley's argument.

First, Culley has presented no evidence that Oasis knew or should have reasonably anticipated that Gregory presented any danger or that, if it did, it had time to contact the police between having knowledge of the potentially dangerous situation and the start of the fracas. *See Borne v. Bourg*, 327 So.2d 607, 610 (La.App. 4 Cir. 1976)("Under our law part of the duty imposed on those in charge

9

of a business establishment, *if time allows*, is to call the police in the event of a disturbance in order to prevent injury to patrons.")(Emphasis added.).

Second, Culley's argument with regard to this issue is primarily that Oasis should have contacted the authorities for *medical treatment* not for *police protection*. Even assuming that *Rodriguez*, 400 So.2d 884, extends such a duty to Oasis, Culley offered no evidence that he suffered actual damages as a result of any failure on the part of Oasis to contact the authorities. *See Pinsonneault*, 816 So.2d 270. Although Culley asserted at the hearing on the motion for summary judgment that this was an issue for the factfinder, the moving party sustained its initial burden under La.Code Civ.P. art. 966(C)(2). Thus, Culley was required to show that he would be able to meet his evidentiary burden of proof at trial. *Id.* He did not do so, offering only an assertion instead. "[S]uch speculation falls far short of the factual support required to establish that plaintiff will be able to satisfy his evidentiary burden of proof at trial." *Babin v. Winn-Dixie La., Inc.*, 00-78, p. 5 (La. 6/30/00), 764 So.2d 37, 40.

Culley's argument in this regard is without merit.

### DECREE

For the foregoing reasons, we affirm the trial court's judgment granting the motion for summary judgment dismissing the plaintiff's claims against the defendant, Oasis Sports Bar & Grill, LLC. Costs of this appeal are assessed to the plaintiff, Frank Culley Firmin.

**AFFIRMED.**